Oh yes, oh yes, oh yes. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. Please be seated. We're having a little discussion here on the first case. Can we have the same counsel for both cases? Or are we on the first two cases? Yes, Your Honor. So, have you thought about, well, just have one argument? Yes, Your Honor. Thank you. Okay, first case today is 5-13-174, Madison County Mass Transit v. Juenger. And the second one is 5-14-197, Madison County Mass Transit v. Torres. Counselor, ready? Morning, Your Honors. John Papa here for the Madison County Mass Transit District. The cases involved in these two appeals come from condemnation actions that were filed against private property by the Madison County Mass Transit District to construct a bike or walking trail. They were an attempt to obtain small parcels of larger parcels of private property belonging to the Juenger and Torres families. The primary question for the court to consider today involves whether an application for attorney's fees, which were incurred in defense of the condemnation action, was timely filed by the appellees. A secondary question, which would be reached only if the court felt that the application was filed in a timely fashion, was whether the fees that were filed for were reasonable. And to use the statutory language from the Condemnation Act in that regard, this court would be asked to determine whether those fees were fair and just. Mr. Papa, I know at the time this was briefed, of course, the Paletti case had not been determined, and it is an unpublished opinion, but is there any difference between the Paletti case and these two cases? No practical difference, Your Honor. What are the unpractical differences? Different parties, different locations, but in terms of the timing of the decision, the timing of the filings are virtually identical. Okay, well, I'll ask the same thing of the appellees. Okay, thank you. Go ahead and proceed. Judge Crowder, in fact, did not approve all of the fees that were sought by counsel for the appellees in this case. She found some irregularities in what was submitted. But I think the appellees face a more fundamental problem with their case. The fee application was not filed to quote the statute in the case, similar to the situation that was found by this court in the Paletti cases. The only reasonable construction that would be made of that language in the attorney's fee provision of the condemnation law is that it means that it has to be filed in the condemnation case. The fee can't be filed any time when the trial court has lost jurisdiction of the case. And in this instance, that would be 30 days after the final order that was entered by the trial court, I believe, on the 10th day of November 2011. This was argued to Judge Crowder, and she resolved the case relying upon the Village of Libertyville case to mean that the court had discretionary power to extend the period of filing for the application of fees. We've cited to the court the Rodriguez case, which we believe is both instructive and controlling in this matter. The question that was resolved in the Rodriguez case is virtually identical to the question presented to this court. The statutory language interpreted is identical for all practical purposes. Fees sought in this case were sought greater than 30 days after the final order of the trial court. Libertyville doesn't control, is distinguishable in many respects. At the time the Libertyville litigants sought their fees, the case still was viable. It was on appeal. It was filed within 30 days after the court had rendered its final order. So, given those circumstances, we don't believe there's any reason to go beyond and argue the reasonability of the fees that are requested because, given the circumstances, they simply were filed out of time. I realize that this may seem to be an unfair outcome because of the circumstances and the fact that the parties were not able to determine or didn't determine that the court had entered a final order in November of 2011. But that's on the litigants and the lawyers' responsibility, not on this court's responsibility. The Condemnation Act does not create a private cause of action for attorney's fees. You must file your request for attorney's fees while the condemnation action is viable and is still pending. So, I would answer any questions the court has, but I think the issues are very straightforward. We've briefed them both in the prior case, the Paletti cases, and in these cases, and we feel that the court understands and appreciates the circumstances and why the case needs to have the outcome that would be consistent with the Paletti outcome. There was not. Thank you. May it please the court. Counsel. Good morning, Your Honors. My name is Rene Bassett Butler. I represent the Torres and the Inger defendants in this case. Your Honors, the trial court was correct indeed in awarding attorney fees in the Torres and the Inger cases. The trial court ruled that the express statutory language of 735 ILCS 3010570 did not include a time limitation in which to file the motion for attorney fees. The legislature certainly could have included a time limitation, but they did not. The lack of the time limitation should allow the attorney fees and costs to be upheld in this case. This statute should be strictly construed according to the Carson, Perry, and Scott case. Upon application for attorney fees pursuant to the statute, the court should award them. The statute goes on to further state that it is right and just to award the fees and costs. Madison County Mass Transit states in its brief that the order entered on November 10, 2011 did not award the attorney fees and expenses. However, this is because the court could not have awarded the attorney fees and costs in the November 10, 2011 order. Madison County Mass Transit argues that the plain meaning of the eminent domain statute required the defendants to file their motion for fees and costs within 30 days of the order granting the traverse. However, the statute makes no reference to the 30-day provision, one that could easily have been added in the statutory language had the legislature chose to. The Mass Transit District relies heavily on the Rodriguez case. However, as my brief pointed out, the Rodriguez case can be distinguished from our case for many reasons. The Rodriguez case dealt with the Administrative Law Act under the Administrative Procedure Act, not the Eminent Domain Act. At stake in the Eminent Domain Act are my client's most basic rights, the right not to be deprived of private property for public use without just compensation. Rodriguez also could have made his claim for fees at the time he filed either lawsuit. The doctor filed two claims and had ample opportunity to file his petition for fees at any step in the process. In fact, the Rodriguez court noted that past litigants had indeed made fee requests pursuant to the Administrative Procedure Act with their initial claims. This remedy was not available to us. The Yingers and the Torreses were defendants to this lawsuit. They did not file the claim like the plaintiff did in Rodriguez. Alternatively, the prayer for relief could have been found to be included in the Torres and Yinger in its brief to support the motion for Travers, where the prayer stated any further relief that this court deems just. The rights of our landowners here is one of the most important rights imaginable, the right to be secure in one's own property. And even in its brief, the Madison County Mass Transit District acknowledges that the Eminent Domain Act protects the property rights of landowners, which are of the utmost importance. Moreover, we aren't simply seeking relief from a final judgment order under 735 ILCS 52-1401, but instead seeking an order in the eminent domain case. This type of order does indeed happen in eminent domain cases and can easily happen after an eminent domain case has settled or has gone to verdict. One example is when the state is required to pay statutory interest in a case, and the payment is not made to the landowners by the state for quite some time after the verdict or the settlement. It is not unheard of to have a hearing regarding the payment or the amount of the state's interest, as well as any other issues that may have come up after the case has been decided. And according to my opposing counsel, that would be well after the jurisdiction was lost by the trial court. This could be months or even years after the verdict in the trial court, but yet the court will still conduct a hearing on the interest rate or the ancillary matter, and it doesn't deem itself to have lost jurisdiction because 30 days have elapsed. This does indeed happen at eminent domain cases at the trial court level. Additionally, under 735 ILCS 52-1401, relief can be granted no later than two years after a judgment. We were well within that time frame in asking for attorney fees and costs. Madison County Mass Transit also argues that they made no appeal from the trial court's granting of the Traverse, so we too should be banned from filing our motion for attorney fees and costs. Whether the transit district chose to take an appeal or not is irrelevant to these proceedings. They filed a faulty complaint. The most basic step in the condemnation process was ignored. They did not describe the land taken with specificity. How could they possibly appeal that? No court could rule that the legal description in the instant case, a description that set forth the entire tract of both defendants' lands, was one that adequately, or more importantly, accurately, described the land to be taken from the Torreses and the Yingers. It would be against good conscience to allow the landowners in this case to not recover their fees and costs. These fees and costs were expended not because of a lawsuit that they filed, taking Madison County Mass Transit to court like in the Rodriguez case, but because Madison County Mass Transit wanted the Yingers and the Torreses land for a bike trail, land that neither of the defendants wanted to sell and certainly did not want to have taken from them. It would be unjust indeed to have the landowners bear the cost of defending a lawsuit when they did not file. Additionally, Madison County Mass Transit filed the defective pleading. It was never contemplated by the Mass Transit district to take the entire tract of land from the Torreses or the Yingers. Madison County Mass Transit knew this, but still passed the resolution to condemn, and then later filed the complaint based upon the faulty resolution. A traverse was necessary because of their faulty legal description, not some minor legal technicality. To allow Madison County Mass Transit to not bear the cost of the traverse would be completely unjust and unfair to the landowners. Furthermore, the trial court did not abuse its discretion in awarding the amount of attorney fees to the Yingers and the Torreses. In fact, the trial court heard lengthy testimony describing the attorney fees. There was absolutely no rebuttal witnesses called to show that the amount of the attorney fees were unreasonable. In awarding the fees and costs to the Torreses and the Yingers, the court was acting within its discretion, and its discretion should be overturned only if there is a finding of abusive discretion, according to the Shin case and others. The case at bar was a complex one indeed. The court looked to the reasonable value of the legal services rendered, the result that the traverse was granted, the nature of the claim, the skill and the labor required, and ruled that the Torreses and the Yingers were entitled to $22,551 and $18,110 respectively, as well as the court costs. Further, the court specifically rejected Madison County Mass Transit's position in its March 19th order, the position that the starting date of attorney fees cannot be awarded prior to the date the plaintiff filed the complaint. The exhibits and letters were produced seeking acquisition of the defendant's property well before the actual complaint date of December 2010. The court specifically held that the defendants were reasonable in seeking legal counsel prior to the complaint, and specifically included those fees to be awarded. The plaintiff stipulated that $250 per hour was a reasonable hourly rate to charge for a case of this nature. The court specifically noted that she found counsel credible and clients were credible. The trial court was correct in awarding the fees and costs after the lengthy hearings. The trial court, as Harris Court noted, is the best one to decide the fees and costs based upon its familiarity with the action and the reasonableness of the petition. Wherefore, the Torres and the Yinger defendants pray that this court uphold the trial court in the award of its attorney fees and costs. Thank you. Thank you. Just to clarify a few items that were raised by counsel. The statement that the land was not described with specificity in this case, and in some way that prejudiced the landowners, is a bit of a stretch. What was challenged at the trial court was the language of the resolution that was passed by the Madison County Transit Board. When the complaint was filed, when the documents were submitted to the Torres and the Yingers, they knew precisely what parcels of ground and what portions of parcels of ground were involved in this. They were given legal descriptions. They were given maps and plaques that showed what this was. But the court focused on the resolution language, which said that the taking would take place from a parcel of ground, which was the full parcel that the Torres and the Yingers owned in this case. So it's not that the landowners weren't aware of the precise area that was being sought by the transit authority in this instance. And I think, you know, they relied upon this technicality that the court focused on, that you didn't put precisely the language of the legal description in the resolution authorizing the condemnation action. But once the action was instituted, all of the information was in fact contained within the documents that were given to the parties involved. In a way, that aspect of this case shows why it's so important that this court respect the time limitations that are applied to actions such as this. The transit authority would have loved to have appealed the decision of the trial court focusing on this particular defect in the process that was engaged in to institute this taking. But because we didn't do anything within 30 days after the court's order, we're foreclosed from doing it. It's the same principle that should be applied to any other action that's taken outside of the time. Counsel suggests that by including language in their written submission of argument to the court seeking any further relief, as being a reason that this court should disregard typical construction of statutes and say, well, you protected your interest in that regard. If, in fact, they're going to say that, the trial court made its decision based upon this written submission, in part, I would suggest. And if the trial court didn't address attorney's fees in that order, then it's res judicata. They can't get it now. So they can't have it both ways. They can't have the trial court's order being respected in one sense and not being respected in the other. They claim that statutory interest is often given well after 30 days after a final decision in a condemnation case. But that is well-recognized collateral matter that there is authority for, both statutory and judicial authority for, to take place. They say that they couldn't file for these fees, as in Rodriguez, at any time during the process. I haven't seen one citation that they couldn't have put in their answer, in their traverse, to seek attorney's fees, if they were successful. In fact, they were quite determined in the language of their motion to traverse to point out to the court a host of reasons why the transit district had not complied with the Condemnation Act in this matter. The court focused on one of a host of irregularities or challenged filings. So they could have asked for the attorney's fees. There's nothing in the statute that says you have to wait until you win to seek attorney's fees. Of course, you don't have much motivation to seek them before. But what is the harm in asking for fees? You would be given leave, then, to file your bill requests and to provide the court with the reasons why you believe you're entitled to these many fees, and to submit records that were contemporaneous with the work that was done. In this instance, it appears clear that the records were generated after this case was heard and after we finally determined what was the outcome of the case. Thank you, Your Honor.